UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PROVEN WINNERS NORTH
AMERICA, LLC,

      Plaintiff,

vs.                                        Case No. 2:06-cv-00428-JES-DNF

CASCADE GREENHOUSE, et al.

      Defendants.

_____/

### MOTION TO DISMISS OR IN THE ALTERNATIVE TO TRANSFER
#### (Concise Statement of the Precise Relief Requested)

Defendants, Randy Wosepka dba R&L Greenhouses and Cascade Greenhouses, and Perennials Plus, a separate entity not related to Randy Wosepka, hereby move the Court pursuant to Rules 12(b)(1), (2), (3), (4), (5), and (7) of the Federal Rules of Civil Procedure to dismiss Plaintiff's Complaint or in the alternative transfer jurisdiction pursuant to 28 U.S.C. § 1404(a) to the Western District of Washington.

### MEMORANDUM IN SUPPORT OF DISMISSAL AND/OR TRANSFER
#### (Statement of the Basis for the Request)

This Court should dismiss Plaintiff's Complaint.  None of the Defendants have any connection to Florida, they have not availed themselves of Florida, and none of the acts alleged to constitute plant patent infringement occurred in Florida, and thus dismissal is required under FRCP 12(b)(2) for lack of personal jurisdiction and FRCP 12(b)(3) improper venue.

The Court should dismiss Plaintiff's Complaint as to Perennials Plus because Perennials Plus was not served and/or was not properly served and thus dismissal is required by FRCP 12(b)(4) and/or FRCP 12(b)(5).  Plaintiff served Randy Wosepka,

purportedly as an agent of Perennials Plus. Randy Wosepka is neither an owner, employee, or agent of Perennials Plus and is not authorized to accept service on behalf of Perennials Plus

The Court should dismiss Plaintiff's Complaint because Plaintiff lacks standing to bring a cause of action for plant patent infringement on the patents alleged.  Pursuant to FRCP 12(b)(1), lack of jurisdiction over the subject matter, and FRCP 12(b)(7), failure to join a party under Rule 19, the Complaint must be dismissed for failure to join the record title owners of the plant patents sued upon. Plaintiff is not listed anywhere in the record title for the plant patents and Plaintiff failed to join the record title holder owners of the plant patents it sues upon.  Defendants have requested a copy of the alleged exclusive licensing agreement from Plaintiff's counsel, but  Plaintiff refused to provide them (assuming they exist).  It is Plaintiff's burden to establish subject matter jurisdiction when it is questioned.

In addition or in alternative to dismissal of some or all parts of the Complaint and parties, the Court should transfer this case to the Western District of Washington pursuant to 28 U.S.C. § 1404(a).  Defendants, a small greenhouse business in Vancouver, Washington, a sole proprietorship of Randy Wosepka, operate and conduct business in Vancouver, Washington.  Florida is extremely inconvenient for Defendants.  Defendants have engaged in no activity and signed no contract which would have given them any form of notice that they could be hauled into suit in Florida.

## FACTS IN SUPPORT OF MOTION

Plaintiff is a California limited liability company based in California, and selling flowers throughout the United States.  *Declaration of Counsel Rylander (Rylander*

*Decla.) ¶ 4.*  Defendants Randy Wosepka, Cascade Greenhouse, R&L Greenhouses, and Perennials Plus are all based in Vancouver, Washington.   Defendants all operate in Vancouver, Washington and sell in the Pacific Northwest.   None of the Defendants do not do business in Florida.  None of the Defendants have never done business in Florida. The Defendants have not bought product in Florida.  The Defendants  have not sold product in Florida. None of the Defendants have customers in Florida.  None of the Defendants shippers are in Florida.  None of the Defendants have solicited customers in Florida.  *Declaration of Wosepka (Wosepka Decla.) ¶¶ 2-5; Declaration of Peterson (Peterson Decla.) ¶¶ 3-4; Declaration of James Roberts (Roberts Decla.) ¶¶ 6-8.*

The only person served in this suit is Randy Wosepka.   He owns R&L Greenhouses and Cascade Greenhouse.  However, he is not an agent of Perennials Plus, nor is he owner or employee of Perennials Plus.  *Wosepka Decla. ¶¶ 2-3; Roberts Decla. ¶¶ 2-4.*

A suit in Florida would be financially disastrous for the Defendants.   It is prohibitively expensive to send defense counsel to Florida.  It is prohibitively expensive to pay for travel of witnesses and parties to Florida. *Wosepka Decla. ¶ 5; Peterson Decla. ¶ 18; Roberts Decla. ¶ 9.*

Prior to September 2004, Defendant R&L Greenhouses, through manage Kyle Peterson, bought the flowers that are at issue in this case from a broker named Fred C. Gloeckner & Company, based in New York.  The invoices all had contract terms on the back.  The invoices did not mention any other contract. The terms on the back of the invoices do not mention Proven Winners, nor any other agreement or any other terms. The invoice terms say it may not be modified except in writing signed by the seller.

*Peterson Decla. ¶ 5; Wosepka Decla. ¶¶ 7-8.*

R&L Greenhouses received the plants in issue around September 2004. The plants came in open boxes in trays, with a label stuck to each tray identifying the flowers. The delivery containing the order which included the diseased plants arrived via Peninsula truck lines.  The particular truck that came in did not have a lift gate.  Therefore, the driver of the truck handed the open top boxes down to me from the truck one box at a time.  There was no "shrink wrap" on these boxes.  There was no contract from anyone on these boxes.  Nobody sign any contract from anyone prior to this delivery.  Nobody signed a contract with anyone during this delivery. *Peterson Decla. ¶¶ 5-9, 13; Wosepka Decla. ¶¶ 8, 11.*

The Bacopa/Sutera (both white and blue) were diseased with Botrytis. The plants all died approximately 2 weeks later.  Mr. Peterson placed numerous calls to the broker, Gloeckner.  A Gloeckner representative said she would call Proven Winners for credit and give me a return call if she could not get credit.  She never called back. Defendant never got a credit. *Peterson Decla. ¶¶ 13-15.*

By December 2004, two varieties of the Petunias which were in the shipment were showing dramatic signs of disease which we believe to be Tomato Mosaic Virus. Defendants called some more, including to Proven Winners. *Peterson Decla. ¶ 14; Wosepka Decla. ¶¶ 6, 13-14.*

In January 2005, a woman called Heidi Brinnich showed up at our greenhouse in Vancouver, Washington and demanded to inspect our property and stated she would get a warrant from the police if not allowed to inspect.  She saw cuttings from the dead and dying flowers, and demanded immediately that they destroy them or she would call the

police. Not knowing any better, Defendant destroyed each and every one of them right then and there. *Peterson Decla. ¶ 15; Wosepka Decla. ¶¶ 6, 13-14.*

The following are witnesses who are known to have seen the flowers at issue, and that they were diseased and dying with Botrytis and Tomato Mosaic Virus: Randy Wosepka, Kyle Peterson, Keri Wosepka Roberts, James Roberts, Jo Wosepka, and Dan Chapman. All of these individuals live in Southwest Washington. There is also an additional witness who we believe is an expert who could testify that some of the Proven Winners flowers were dying of Tomato Mosaic Virus. This witness lives in Portland, Oregon. *Wosepka Decla. ¶ 6.*

## ARGUMENT

### A. DISMISSAL

### 1. This case should be dismissed for lack of personal jurisdiction

In determining whether to dismiss for lack of personal jurisdiction under FRCP 12(b)(2), the court must consider whether the Florida long-arm statute provides a basis for personal jurisdiction, and whether sufficient minimum contacts exists between the defendants and the forum state. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623 (11th Cir. 1996); Panavision International, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). Here, there is no basis for the Middle District of Florida to exercise either general or specific jurisdiction over Defendants. The Florida long-arm statute does not allow service of process, there is not sufficient minimum contacts with the forum state to satisfy due process and due process is fundamentally offended because it would not comport with traditional notions of fair play and substantial justice to subject defendant to suit in the forum state.

**(a).**    **The Florida long-arm statute**

This court must interpret the Florida long-arm statute as would the Florida courts.   The Florida long-arm statute is to be strictly construed.   <u>Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.</u>, 701 F.2d 889 (11th Cir. 1983). Under Florida law the plaintiff bears the burden of proving personal jurisdiction, and where the defendant questions jurisdiction through affidavits, testimony or documents, the plaintiff bears the burden of proving jurisdiction by the same.   <u>Jet Charter Serv., Inc. v. Koeck</u>, 907 F.2d 1110 (11th Cir. 2000).

Florida Statute Annotated ch. 48.193 provides for the service of persons: "(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state…."   To carry on a business venture in Florida under F.S.A. 48.193(a) requires that the defendant's activities, viewed collectively show a general course of business for pecuniary benefit. <u>Dinsmore v. Martin Blumenthal Associates Inc.</u>, 314 So.2d 561 (Fla. 1975); <u>Bank of Wessington v. Winters Gov't Sec. Corp.</u>, 361 So.2d 757 (Fla.Dist.Ct.App. 1978). Here, Plaintiff cannot establish that Defendants carried on a business or business venture in Florida, let alone for pecuniary benefit.   Defendants did not and do not maintain offices in Florida, nor do Defendants rent, sell, offer for sale, purchase or lease products or services from Florida, personally or through an agent. Defendants did not order the plants in issue from Florida, but ordered them from New York.   In fact Defendants did not even order the plants at issue from Plaintiff. Lacking evidence showing that Defendants operated a business or business venture in Florida, personal jurisdiction is not proper because Defendants cannot be properly served under the Florida long-arm statute.

In addition to the insufficiency of the Florida long-arm statute in this case, personal jurisdiction is not proper because of due process.

**(b).**   **Due Process**

Personal jurisdiction complies with due process when the nonresident defendant has purposefully established minimum contacts with the forum state, and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.  International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).  The present case satisfies neither requirement and therefore should be dismissed.

**(i).**   **Minimum contacts**

A determination of minimum contacts requires analysis of three factors: (1) the contact with the forum must be related to the plaintiff's cause of action or have given rise to it, (2) the contacts must involve some purposeful availment of the privilege of conducting business in the forum and (3) the defendant's contacts with the forum must be such that it reasonably anticipates being subject to suit in the forum.  Francosteel Corp. v. M/V Charm, 19 F.3d 624 (11th Cir. 1994); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).  Defendants have no general and no transaction specific, contacts with Florida, and Defendants had not reasonably anticipated being subject to suit in the forum state.   Lawson Cattle & Equipment, Inc. v. Pasture Renovators LLC, 139 Fed.Appx. 140 (11th Cir. 2005).

Plaintiff's claims do not arise out of any activity in Florida.  None of Defendants' customers are located in Florida, and none of Defendants' alleged infringement occurred in Florida.  Defendants have not "purposefully availed" itself of the laws of Florida. Defendants are not located in Florida, conduct no business in Florida, and solicit no

customers in Florida.  Therefore, Defendants are not subject to personal jurisdiction in Florida.

### (ii).     **Fair play and substantial justice**

Subjecting Defendants to suit in this case offends traditional notions of fair play and substantial justice.  Analysis of fair play requires a balancing of the plaintiff's interest in obtaining relief and the forums interest with the burden placed on the defendant by having to defend oneself in a foreign legal system.  International Shoe Co., 326 U.S. 310, 90 L.Ed. 95 (1945).  The burden placed on the defendant in this case is extremely offensive in light of the fact that defendant has not had any contacts with Florida.  An exercise of personal jurisdiction where there is not minimum contacts with the forum state offends traditional notions of fair play and substantial justice. International Shoe Co., supra; Hanson v. Denckla, 357 U.S. 235, 2 L.Ed.2d 1283 (1958); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 62 L.Ed.2d 490 (1980).

Here, the exercise of jurisdiction over these parties and this cause of action in Florida would be unreasonable.  The court considers the following factors in determining whether the exercise of jurisdiction is reasonable: (1) the extent of purposeful availment; (2) the burden on defendant in defending in the forum; (3)the extent of conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) The most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Panavision, 141 F.3d at 1323.  No one factor is dispositive, rather the court balances all seven.  Id.

These factors weigh heavily against personal jurisdiction over Defendants in Florida.  As discussed above, it is undisputed that Defendants conduct no business in Florida.   All relevant activity occurred in Washington. Washington, as opposed to Florida, has more interest in this lawsuit concerning Defendants which are located and based in Washington.   In addition, no evidence regarding Plaintiff's claims exists in Florida, and all the witnesses are in Washington or scattered around the country in various states. In fact, the witnesses that Defendants presently intend to call at trial are in Washington.

In sum, neither this case nor the Defendants have any significant connection with Florida and none of the activities, witnesses or evidence are located in Florida.

**2.**      **Venue is improper and this case should be dismissed**

The general venue statue, 28 USC § 1391(a), provides, in pertinent part:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district <u>where any defendant resides,</u> if all defendants reside in the same State, (2) a judicial district in which <u>a substantial part of the events or omissions giving rise to the claim occurred,</u> or a substantial part of property that is the subject of the action is situated, or (3) <u>a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.</u>

(Emphasis added).  The patent specific venue statute 28 USC § 1400(b) provides:

Any civil action for patent infringement may be brought in the judicial district <u>where the defendant resides,</u> or <u>where the defendant has committed acts of infringement and has a regular and established place of business.</u>

(Emphasis added).   To survive a motion to dismiss for lack of venue, the Plaintiff must present a *prima facie* showing that personal jurisdiction and venue are proper.  <u>Delong Equipment Co. v. Washington Mills Abrasive Co.,</u> 840 F.2d 843 (11th Cir. 1988).  The *prima facie* requires showing the weight of the contacts took place in the district where

the suit is filed and that each defendant has performed a substantial or significant act related to the claim in that district. *Id*. Plaintiff has not and cannot make this showing.

Here, under either venue statute, the only proper venue is Washington. Defendants do not reside in Florida. The acts alleged to constitute plant patent infringement occurred in Vancouver, Washington. The shipment of plants was to Vancouver, Washington. The shipment did not originate in Florida. Defendants regular and established place of business is in Vancouver, Washington. Defendants are not subject to personal jurisdiction in Florida, but they are in Washington. Venue in Florida is simply not proper.

**3.** **Service was not effected properly, or at all, on Perennial Plus, and therefore it should be dismissed from this suit**

Plaintiff has not served Perennials Plus. Pursuant to FRCP 12(b)(4) and/or 12(b)(5), the Complaint must be dismissed as to Perennials Plus. Spencer v. Town of Chapel Hill, 290 F.Supp.2d 655 (M.D.N.C.2003) (Plaintiff's failure to serve summons and complaint on certain named defendants warranted dismissal); Brand v. Mazda Motor of America, Inc., 920 F.Supp. 1169 (D.Kan.1996) (Upon motion to dismiss for insufficient service of process, plaintiff must make *prima facie* showing that service satisfied statutory requirements and requirement of due process); Jones v. Motorola, Inc., 186 F.2d 707 (2d Cir. 1951), certiorari denied 72 S.Ct. 31, 342 U.S. 817, 96 L.Ed. 618 (Where attempted service of process did not give jurisdiction over foreign corporation, and it did not appear likely that service could be made upon foreign corporation within the district, dismissal of the complaint was right.); Beatie and Osborn LLP v. Patriot Scientific Corp., 431 F.Supp.2d 367 (S.D.N.Y.2006) (When defendant files motion to dismiss challenging sufficiency of service of process, plaintiff bears the burden of

proving adequacy of service.)

Here, Plaintiff attempted to serve Defendant Perennials Plus solely by service upon Randy Wosepka.   Randy Wosepka is not an owner, employee, or agent of Perennials Plus.  He is not authorized to accept service on behalf of Perennials Plus. Beyond, Perennials Plus does not have any connection with the operative facts and circumstances in this case.  The service on Perennials Plus is clearly insufficient and the suit against Perennials Plus must be dismissed.

4.     **Plaintiff lacks Standing to sue on the plant patents and failed to join the owners, who are Indispensable Parties**

Plaintiff is not the record title owner for any of the patents asserted.   *Rylander Decla.¶¶ 2-3.* Accordingly, absent an exception, Plaintiff, as a licensee, cannot file suit for patent infringement without, at a minimum, joining the legal title owners. Sicom Systems, Ltd. v. Agilent Tech., Inc., 427 F.3d 971 (Fed. Cir. 2005); Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198 (Fed. Cir. 2005). This is a well known and fundamental principal of patent law. Sicom Systems, id.; see Independent Wireless Tel. Co. v. Radio Corp., 269 U.S. 459, 466, 70 L.Ed. 357 (1926); Gayler v. Wilder, 51 U.S. 477, 10 How. 477, 13 L.Ed. 504 (1850) (An action at law may not be maintained for the infringement of a patent by a mere licensee but it should be brought in the name of the holder of the legal title on behalf of the licensee); Tyler v. Tuel, 6 Cranch, 324, 3 L.Ed. 237 (1810).

Standing to sue is a threshold requirement in every federal action. Sicom Systems, 427 F.3d at 975. Standing must be present at the time the suit is brought. Sicom Systems, 427 F.3d at 975-76.  The party bringing the action bears the burden of establishing that it has standing. Sicom Systems, 427 F.3d at 976. The owner of a patent or the owner's

assignee can sue for patent infringement, but a licensee alone cannot, unless the licensee holds "all substantial rights in the patent. <u>Sicom Systems</u>, 427 F.3d at 976.   "A nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement." <u>Sicom Systems</u>, 427 F.3d at 976 (citing  <u>Rite-Hite Corp. v. Kelley Co., Inc.</u>, 56 F.3d 1538, 1552 (Fed.Cir.1995), and  <u>Ortho Pharm. Corp. v. Genetics Inst., Inc.</u>, 52 F.3d 1026, 1031 (Fed.Cir.1995)).

While a licensee normally does not have standing to sue without the joinder of the patentee, an exclusive license may be treated like an assignment for purposes of creating standing if it conveys to the licensee all substantial rights. <u>Sicom Systems</u>, 427 F.3d at 976 (citing <u>Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA</u>, 944 F.2d 870, 875 (Fed.Cir.1991)).  "[A]ll substantial rights" are defined as those rights sufficient for the licensee or assignee to be "deemed the effective patentee." <u>Sicom Systems</u>, 427 F.3d at 976 (citing <u>Prima Tek II, L.L.C. v. A-Roo Co.</u>, 222 F.3d 1372, 1377 (Fed.Cir.2000)). The transfer of anything less than all substantial rights of value in a patent is a "license" which conveys no proprietary interest to licensee. <u>Bell Intercontinental Corp. v. U.S.</u>, 381 F.2d 1004, 152 U.S.P.Q. 182, 154 U.S.P.Q. 373 (Ct.Cl. 1967). Whether transfer of patent rights constitutes assignment or license depends on substance of agreement rather than what agreement calls itself. <u>McNeilab, Inc. v. Scandipharm, Inc.</u>, 862 F.Supp. 1351 (E.D. Pa. 1994), <u>affirmed</u> in <u>part,</u> <u>reversed</u> in <u>part</u> 95 F.3d 1164.

The Court is required to substantively review any license Plaintiff contends gives it standing, because "[e]ach license and assignment is unique, therefore **this court 'must ascertain the intention of the parties and examine the substance of what [the**

licensing agreement] granted" to determine if it conveys all of the substantial rights in the patent and is sufficient to grant standing to the licensee.'" <u>Sicom Systems</u>, 427 F.3d at 976 (omitting citations) (brackets in original) (emphasis added).

In <u>Sicom Systems</u>, the "exclusive" licensee of patent for type of digital signal transmission channel monitor sued competitors for infringement.  The district court dismissed for lack of standing, and licensee appealed.  The Federal Circuit affirmed, holding that licensee lacked sufficient ownership rights to confer standing to sue for commercial infringement in its own name, and that the  dismissal with prejudice was not abuse of discretion.

In <u>Agrashell, Inc. v. Hammons Products Co.</u>, 352 F.2d 443, 147 U.S.P.Q. 347 (8th Cir. 1965), the licensee could not sue for infringement without joining the patent owner, where in the license agreement the patent owner granted to licensee sole and exclusive right and license to manufacture, use and sell patented compositions and processes until expiration of patent but expressly reserved the owner's right to make, use and sell compositions and to convey right to use such processes, because the license did not constitute assignment of full patent rights.

Calling a license an "exclusive" license does not make it so.  In <u>Mission I-Tech Hockey Ltd. v. Oakley, Inc.</u>, 394 F.Supp.2d 1270 (S.D.Cal.2005), the licensee of an "exclusive" patent license did not have all substantial rights to patent, and thus lacked standing to sue patentee for infringement because the licensee lacked right to sublicense, while patentee retained the obligation to enforce patent against third parties, the right to approve of licensee's advertisements, and right to obtain equivalent foreign patents.

In <u>Penril Datacomm Networks, Inc. v. Rockwell Intern. Corp.</u>, 934 F.Supp. 708

(D.Md.1996), the licensee was a "bare" licensee under patent, rather than an exclusive licensee, and thus had no standing to sue for patent infringement, even though agreement gave licensee the right to bring suit against third-party infringers without patentee's consent, because license agreement allowed patentee to grant other persons the right to make, use, and sell patent, and agreement compelled licensee to offer nonexclusive licenses to potentially interested third parties..

In Mentor H/S, Inc. v. Medical Device Alliance, Inc., 240 F.3d 1016, 57 U.S.P.Q.2d 1819 (Fed. Cir. 2001), an agreement between patentee and licensee did not transfer all substantial rights in the patent, and therefore licensee was an exclusive licensee and not a "patentee" with standing to sue in its own name for patent infringement; patentee retained significant ownership rights in the patent since it could supervise and control licensee's product development, was obliged to pay the maintenance fees for the patent, and, most importantly, had the first obligation to sue parties for infringement.

Here, Proven Winners is not listed in the record title of any of the plant patents. *Rylander Decla. ¶¶ 2-3.*  A California company named Plant 21 LLC is the record title holder for Plant Patent Nos. PP15,607, PP13,545, and PP13,510.  A Japanese company named Sakata Seed Corporation is the record title holder of Plant Patent Nos. PP14,037 and PP13,887.  A Canadian named Reinhard Rother is listed as the record title holder of Plant Patent No. PP11,835 and PP10,966.  In an effort to investigate the basis for standing, Defense counsel asked Plaintiff's counsel to provide a copy of the license agreements purportedly giving Plaintiff standing.  Plaintiff, however, refused.  *Rylander Decla. ¶ 3.*

Based on the clear record title, and the refusal to provide the agreements, Defendants must contest Plaintiff's standing to sue on the plant patents it lists.[1]

### B.   TRANSFER TO THE WESTERN DISTRICT OF WASHINGTON

In the alternative, assuming for the sake of argument the Court finds that venue, personal jurisdiction, standing, and service of process are proper, the Court should transfer the case to the Western District of Washington for the convenience of the witnesses and the interest of justice. 28 USC § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The court has broad discretion to transfer under this rule. Norwood v. Kirkpatrick, 349 U.S. 29 (1955). Here, the overwhelming convenience of the witnesses, parties, the locus of infringing activity, and the interests of justice, militate in favor of transferring this case to the Western District.

### 1.   The Western District of Washington is an appropriate alternative forum

Under 28 USC §§ 1391(c) and 1400(b), venue in a patent infringement case is proper where any defendant resides  VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574 (Fed Cir 1990).  Since defendant is subject to personal jurisdiction in the Western District of Washington, venue is proper there.

### 2.   The Western District of Washington is significantly more convenient

The factors to consider when assessing a motion to transfer under § 1404(a) are: the convenience of the parties, the convenience of the witnesses and the interest of justice.  Underlying these three factors is a much longer list of factors relevant to a

---

[1] Defendants reserve the right to make Rule 12(b)(6) motion to dismiss for, among other things, the fact that the acts alleged to constitute infringement occurred in January 2005, yet Plaintiff asserts Plant Patent No. PP15,607, which did not issue until March 2005.

determination of whether a transfer of venue is appropriate.  Coffey v. Van Dorn Iron Works, 796 F.2d 217 (7th Cir. 1986).  This longer list of factors is often divided into two sub classes of factors referenced as private and public factors.  Cowan v. Ford Motor Co., 713 F.2d 100 (5th Cir 1983) (Citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 1947).  The private factors to consider are: plaintiff's choice of original forum; the location of the events at issue in the lawsuit; the convenience of the parties; the convenience of the witnesses; the comparative availability of compulsory process to compel the attendance of unwilling witnesses; the location of physical evidence; and in which forum can the case be tried more inexpensively and expeditiously. See 15 MOORE'S FEDERAL PRACTICE § 3847 (3d ed. 2006). The public factors most often considered are: the relative court congestion in the two forums; the public interest in the adjudication of the controversy; the relative familiarity of the courts with applicable state law; which forum would better serve judicial economy. Id.

A decision to transfer should be made on a case by case basis and the district court judge is given broad discretion in determinations of a motion to transfer venue. Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982 (11th Cir. 1982).  As previously mentioned the relevant factors weight heavily in favor of a transfer to the Western District of Washington.  The private interests weigh heavily in favor of allowing this action to be resolved expeditiously in Washington.  None of the operative facts from which Plaintiff's claims allegedly arise occurred in Florida and none of the witnesses or evidence relevant to Plaintiff's or Defendants' claims are in Florida.

Notably, Plaintiff will be minimal inconvenienced, if at all.  Plaintiff is a California limited liability company based in California.  As Plaintiff states in its

Complaint, it does business "throughout the United State**s and North America**."

*Complaint ¶ 4.*   Accordingly, the private interests strongly favor transfer to the Western

District of Washington.

Like the private interests, the public interests strongly favor transfer of this case

because Defendants are in Washington.   No other state has a greater interest that

Washington.  Moreover, the majority of the witnesses and the site of the operate facts and

the location of the alleged acts are all in Vancouver, Washington.

The relevant considerations are illustrated in the table below:

| CONVENIENCE OF THE WITNESSES | |
|---|---|
| *Witness* | *Location/Choice of Appearance* |
| Randy Wosepka | Vancouver, Washington |
| Kyle Peterson | Vancouver, Washington |
| James Roberts, owner of Perennials Plus | Vancouver, Washington |
| Keri Wosepka Roberts, owner of Perennials Plus | Vancouver, Washington |
| Joe Wosepka | Vancouver, Washington |
| Dan Chapman | Vancouver, Washington |
| Expert-Tomato Mosaic Virus | Portland, Oregon |
| Heidi Brinnich, inspector | Portland, Oregon |
| SITUS | |
| Location of operative facts and alleged infringement | Vancouver, Washington |
| CONVENIENCE OF THE PARTIES | |
| Proven Winners North America LLC, a California limited liability company | "throughout the United States and North America." *Complaint ¶ 4* |
| Randy Wosepka dba R&L Greenhouses and Cascade Greenhouse | Vancouver, Washington |
| James and Keri Roberts, Perennial Plus | Vancouver, Washington |
| INTERESTS OF JUSTICE | |
| Location of Documents & Things | Washington |
| Extent of Trial Preparations | Washington |
| Personal Jurisdiction over Defendants | Washington |

| Personal Jurisdiction over Plaintiff | Throughout North America |
|---|---|
| Venue over action | Washington |
| State having most interest | Washington |
| Relative congestion | Middle District of Florida has twice as many cases as the Western District of Washington, yet the Tacoma division as 3 district court judges and the Fort Myers division only 1 |

For all these reasons, the private public interest favors expeditious resolution of this matter in Washington.

**(a).   Plaintiff's choice of forum**

Previously the weight accorded plaintiff's choice of forum was much stronger than today.  Currently the plaintiff's choice of forum is a factor, but is neither conclusive nor determinative.  Garner v. Wolfbinger, 433 F.2d 117 (5th Cir. 1970).  This factor may be even further discounted if it has no connection with the facts at issue. Rocoh Co. v. Honeywell, Inc, 817 F Supp 473 (D NJ 1993); *S.C.* Johnson & Son v. Gillette Co., 571 F Supp 1185 (ND Ill 1983).  Notably, Florida is not Plaintiff's home forum.  Plaintiff is a California company, based in California. Further, none of the facts giving rise to this lawsuit occurred in Florida, the plants at issue were first sold by Plaintiff to a third party in New York and then purchased by defendant from Washington for shipment from California to Washington.  The alleged infringement is alleged to have occurred in Vancouver, Washington.  Plaintiff chose Florida not apparently for its convenience, but rather for the inconvenience of the Defendants.  Therefore this factor carries little weight.

**(b)   The location of the events at issue in this lawsuit**

This factor strongly favors transfer. None of the facts at issue transpired in

Florida. The purchase of the plants at issue was made from Washington and the accused infringing actions took place in Washington.

### (c).   **The convenience of the parties**

This factor strongly favors transfer.  Defendants are all in Vancouver, Washington.  Clearly, the Western District of Washington is more convenient.  Plaintiff is a California company based in California.  Plaintiff also states that it conducts its business "throughout North America".  The location for Plaintiff is not an issue of convenience at all.  Indeed, to all appearances, Plaintiff chose Florida for the *inconvenience* of the defendants.

### (d).   **The convenience of the witnesses**

This factor strongly favors transfer.  All of the witnesses are in Vancouver, Washington, and the Portland-Vancouver metropolitan area.  In some cases, the Western District of Washington, Tacoma Division, agrees to come to Vancouver and hold hearings and trials in Vancouver. Clearly, a trial in Washington is far more convenient for the witnesses than a trial in Florida.

### (e).   **The comparative availability of compulsory process to compel the attendance of unwilling witnesses**

This factor strongly favors transfer.  All of the witnesses are in Vancouver, Washington, within the Western District of Washington. Notably, the Portland-Vancouver metropolitan area is within 100 miles of the Western District of Washington, so witnesses in Portland, Oregon and outlying areas, as far south as Salem, Oregon, can be compelled to testify. Comparably, none of the witnesses are within, nor within a 100 miles of, the Middle District of Florida.

**(f).**     **The location of physical evidence**

This factor favors transfer.   Here, if there is any physical evidence, it would be in Vancouver, Washington, the location of the alleged infringement.

**(g).**     **In which forum can the case be tried more inexpensively and expeditiously.**

This factor strongly favors transfer.   Clearly, it is much cheaper for the Defendants to have the case tried in Washington, because Defendants are based in Vancouver, Washington.   Plaintiff is a California company based in California who does business "throughout the United States and North America."   It is hard to see how it could be more expensive to have the trial in Washington then Florida, and every reason to believe it would be cheaper.

**(h).**     **The relative court congestion in the two forums**

This factor favors transfer.   The judicial facts and figures from the Administrative Office of the Courts shows that form 1990 through 2005, the Middle District of Florida is flooded with roughly double the filings that the Western District of Washington handles.   *Rylander Decla. ¶ 5.*   In 2005 itself, the Middle District of Florida had 7,009 filings, while the Western District of Washington had only 3,411.   *Id.*   Further, the Fort Myers division has one district court judge, while the Tacoma division (which covers Vancouver, Washington), has three district court judges.   So as between Middle District of Florida and the Western District of Washington, and, more importantly, as between Fort Myers and Tacoma, congestion is significantly less per judge in the Tacoma courthouse of the Western District of Washington.

**(i).**     **The public interest in the adjudication of the controversy**

This factor strongly favors transfer.   Florida has no interest in this case.

The Plaintiff is a California company based in California.  Defendants are Washington residents based in Vancouver, Washington.  The broker is a New York company.  The infringement is alleged to have occurred in Vancouver, Washington.

### (j).   The relative familiarity of the courts with applicable state law

This is primarily a plant patent infringement case—a wholly Federal issue. Thus, this factor gives little reason for keeping the case in Florida.  Moreover, to the extent Plaintiff contends a document never seen before was shrink wrapped into an open plant box, and that thus constitutes notice of terms and a binding contract, Washington law, the place of ordering and receipt, would be first looked to determine whether a contract existed.

### (k).   Which forum would better serve judicial economy.

Without taking into account the problems with venue, jurisdiction, and service of process, this factor appears to favor neither forum.

## C.   PLAINTIFF'S ALLEGATION OF VENUE

It is expected that Plaintiff's response will be that venue is based on an unsigned document, which makes no reference to Defendants or the specific plants in issue, which Plaintiff will claim to be a "contract" that was included as "shrink wrap" somewhere in the plant boxes that were shipped, and that this document has a venue provision for the Middle District of Florida.

Defendants had never seen this document before Plaintiff's counsel gave it to Defendant's counsel.  It was not included in the plant boxes.  The plant boxes are shipped in trays with open tops.  *See Exh. A to Peterson Decla.*  There is no "shrink wrap" that bars opening the boxes before using the product (unlike a software shrinkwrap agreement

which you have to actually cut directly through to open the CD at all).  See generally Step-Saver Data Systems, Inc. v. Wyse Tech., 939 F.2d 91 (3d Cir. 1991) (limitation of remedies terms of "Limited Use License Agreement" printed on package containing computer software did not become part of parties' agreement); Klocek v. Gateway, Inc.,104 F.Supp.2d 1332 (D. Kan. 2000) (purchaser did not accept standard terms and conditions agreement, which included arbitration clause, located in package containing computer).  Moreover, Defendants ordered their plants from a third party broker in New York, and the plants were shipped form California, pursuant to written agreement with the third party broker, and that agreement had a clause that said there would be no modifications except by a signed writing, and it made no reference to an alleged "shrink wrap" plant license.

Ms. Whitelaw provided defense counsel with a copy of the document by e-mail in September 2006. *Rylander Decla. ¶ 6 & Exh. D thereto.* It is entitled "PW Customer/Grower Agreement".  Defendants had never seen it before. It had no signatures.  It did not mention the Defendants, the flowers, or the shipment.  It did not accompany any of the boxes of flowers that were received by Defendants. *Peterson Decla. ¶¶ 8-12; Wosepka Decla. ¶¶ 8-12, 15.* The flowers were ordered out of a catalog that includes Proven Winners flowers.  The catalog does not mention any license or contract, or any terms or any venue or choice of forum provisions.  *Peterson Decla., id.; Wosepka Decla., id.* There was absolutely nothing in the ordering, the shipment, or the receipt which would have, or did, alert us to the possibility that Plaintiff would somehow claim we had a contract with Plaintiff, as opposed to the broker. *Peterson Decla. ¶ 12; Wosepka Decla. ¶ 8.*

## CONCLUSION

WHEREFORE the Court should dismiss the Complaint with prejudice or in the

alternative, if the Court determines it has jurisdiction and venue, transfer jurisdiction to

the Western District of Washington.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of February, 2007, I electronically filed

the foregoing with the Clerk of Court using the CM/ECF system which will send a notice

of electronic filing to the following:

**Jennifer L. Whitelaw**
Whitelaw Legal Group
3838 Tamiami Trail North
Naples, Florida 34103
Attorney for Plaintiff

By: /s/ Kurt M. Rylander
**KURT M. RYLANDER**
**Rylander & Associates, PC**
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931 telephone
Attorney for Defendants

AND

By:  /s/ Michael R.N. McDonnell
**MICHAEL R.N. McDONNELL**
Florida Bar No. 124032
**McDONNELL TRIAL LAWYERS**
5150 Tamiami Trail North
Suite 501, Newgate Tower
Naples, Florida 34103
(239) 434-7711 telephone
(877) 613-7485 facsimile
Co-counsel for Defendants